BROWN, Circuit Judge,
concurring:
The Supreme Court in Boumediene and Hamdi charged this court and others with the unprecedented task of developing rules to review the propriety of military actions during a time of war, relying on common law tools. We are fortunate this case does not require us to demarcate the law’s full substantive and procedural dimensions. But as other more difficult cases arise, it is important to ask whether a court-driven process is best suited to protecting both the rights of petitioners and the safety of our nation. The common law process depends on incrementalism and eventual correction, and it is most effective where there are a significant number of cases brought before a large set of courts, which in turn enjoy the luxury of time to work the doctrine supple. None of those factors exist in the Guantanamo context. The number of Guantanamo detainees is limited and the circumstances of their confinement are unique. The petitions they file, as the Boumediene Court counseled, are tunneled through one federal district court *42 and one appellate court. See Boumediene, 128 S.Ct. at 2276. And, in the midst of an ongoing war, time to entertain a process of literal trial and error is not a luxury we have.
While the common law process presents these difficulties, it is important to note that the Supreme Court has not foreclosed Congress from establishing new habeas standards in line with its Boumediene opinion. Having been repeatedly rebuffed, see id. at 2240 (holding that the DTA’s procedures were an inadequate substitute for habeas and that the MCA therefore operated as an unconstitutional suspension of the writ); Hamdan v. Rumsfeld, 548 U.S. 557, 576-77, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (holding that the DTA’s withdrawal of federal habeas jurisdiction did not apply to petitions pending at the time of the DTA’s enactment), Congress may understandably be reluctant to return to this arena to craft appropriate habeas standards as it has done for other habeas contexts in the past. But the circumstances that frustrate the judicial process are the same ones that make this situation particularly ripe for Congress to intervene pursuant to its policy expertise, democratic legitimacy, and oath to uphold and defend the Constitution. These cases present hard questions and hard choices, ones best faced directly. Judicial review, however, is just that: re-view, an indirect and necessarily backward looking process. And looking backward may not be enough in this new war. The saying that generals always fight the last war is familiar, but familiarity does not dull the maxim’s sober warning. In identifying the shape of the law in response to the challenge of the current war, it is incumbent on the President, Congress, and the courts to realize that the saying’s principle applies to us as well. Both the rule of law and the nation’s safety will benefit from an honest assessment of the new challenges we face, one that will produce an appropriately calibrated response.
Absent such action, much of what our Constitution requires for this context remains unsettled. In this case, I remain mindful that the conflict in which Al-Bihani was captured was only one phase of hostilities between the United States and Islamic extremists. The legal issues presented by our nation’s fight with this enemy have been numerous, difficult, and to a large extent novel. What drives these issues is the unconventional nature of our enemy: they are neither soldiers nor mere criminals, claim no national affiliation, and adopt long-term strategies and asymmetric tactics that exploit the rules of open societies without respect or reciprocity.
War is a challenge to law, and the law must adjust. It must recognize that the old wineskins of international law, domestic criminal procedure, or other prior frameworks are ill-suited to the bitter wine of this new warfare. We can no longer afford diffidence. This war has placed us not just at, but already past the leading edge of a new and frightening paradigm, one that demands new rules be written. Falling back on the comfort of prior practices supplies only illusory comfort.